## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**David Klein, Esq. (DK9675)**
**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
Attorneys for Plaintiff Boscia Trott, LLC

| | |
|---|---|
| **BOSCIA TROTT, LLC**<br><br>         Plaintiff,<br><br><br>vs.<br><br>**MAXVITA, LLC, DR. NEAL STONE,**<br>**LAURA STONE KIM**  and<br>**JACQUELINE MAFFEI**<br><br><br>         Defendants. | CIVIL ACTION NO.:<br><br>**COMPLAINT** |

        Plaintiff Boscia Trott, LLC ("BT") hereby states as follows by way of Complaint against

defendant MaxVita, LLC ("MaxVita"), Dr. Neal Stone ("Dr. Stone"), Jacqueline Maffei

("Maffei") and Laura Stone Kim ("Kim").

## <u>JURISDICTION</u>

        1.        This Court has original federal jurisdiction pursuant to 28 <u>U.S.C.</u> § 1331 <u>et.</u> <u>seq.</u>

and 28 <u>U.S.C.</u> § 1338(a) and (b) governing federal court jurisdiction over copyright actions.

Pursuant to 28 <u>U.S.C.</u> § 1367(a), this Court has supplemental and pendent jurisdiction over the

related state claims asserted in this Complaint since these claims are related to, and form part of,

the same case and controversy as the federal claims asserted.

## VENUE

2.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §
1391(a), (b) and (c) because BT and its members are residents of the State of New York and
reside in New York County, and Maffei and Lee reside in the State of New York, New York
County.   All defendants are also subject to personal jurisdiction in the State of New York and
conduct business in the State of New York, and Maffei and Lee have their address or registered
principal office or business in the State of New York, and all or a substantial part of the events
and defendants' actions and conduct giving rise to the action occurred within the Southern
District of New York.

## THE PARTIES

3.      BT is a New York limited liability company with its principal business address
located at 710 West End Avenue, New York, New York 10025.

4.      MaxVita is a New York limited liability with its principal business address
located at 192 S. Main Street, New City, New York 10956.

5.      Dr. Stone is a citizen of the State of Colorado having his principal residence
located at 675 Lionshead Place, The Arrabelle, Unit # 622, Vail, Colorado 81657.

6.      Kim is a citizen of the State of New York having her principal residence located
at 350 E. 72nd Street, Suite 8A, New York, New York 10021.

7.      Maffei is a citizen of the State of New York having her principal residence
located at 192 S. Main Street, New City, New York 10956.

## FACTS

8.      BT is engaged in the business of designing, manufacturing, creating and
conceiving marking materials, marketing strategies, marking plans, advertising products and
product/service branding concepts.

BE:8633107.1/GAL124-267030

9.     MaxVita is engaged in the business of manufacturing and selling nutritional health shakes to the consumer market.

10.     In or about 2011, BT was retained by MaxVita to create product labels, product art, product names, packaging and labeling, websites, photography, marketing and advertising materials and branding/marketing strategies for MaxVita product line of nutritional health shakes.

11.     At the time MaxVita approached BT, Maxvita was owned by Dr. Stone and Maffei in a 50/50 membership relationship.

12.     Between 2011 and 2013, BT and MaxVita entered into a series of contractual agreements whereby BT agreed to design and create product labels, product art, product names, packaging and labeling, websites, digital and non-digital marketing materials, various promotional materials, photography, marketing and advertising materials and branding/marketing strategies for MaxVita product line of nutritional health shakes in exchange for monetary compensation.

13.     Pursuant to those contractual agreements, BT retained exclusive copyright ownership of all designs, art, product labels, product art, packaging and labeling, websites, photography, marketing materials and advertising materials that BT created for MaxVita.

14.     BT exclusively designed and created all of the product labels, product art, product names, packaging and labeling, websites, photography, digital and non-digital marketing materials, various promotional materials, marketing and advertising materials and branding/marketing strategies for MaxVita product line of nutritional health shakes, which ultimately became called "Millenium Blend," a name that BT created for MaxVita.

- 3 -

BE:8633107.1/GAL124-267030

15.     BT is the sole and exclusive owner of all works it created for MaxVita since those works were all designed and conceived by BT and are original works of authorship that BT reduced to tangible means of expression in digital and/or hard copy format.

16.     BT registered all its created original designs, art, product labels, product art, packaging and labeling, websites, photography, marketing materials and advertising materials that BT created for MaxVita with the United States Copyright Office on or about May 19, 2016

17.     Pursuant to the contractual agreements between BT and MaxVita, MaxVita was expressly prohibited from providing any of BT's copyright works and designs "to any outside agency without express permission of Boscia Trott."

18.     Pursuant to the contractual agreements between BT and MaxVita, MaxVita was expressly prohibited from allowing third-party agencies to create derivative or modified works from BT's copyright works.

19.     The contractual agreements between the parties provides as follows: "NOTE: Maxvita may not provide original designs to any outside agency, firm or third-party without express permission and compensation to Boscia Trott."

20.     Additionally, BT's invoices to MaxVita provide as follows:

    NOTE: As always, Millennium Blend may not provide original designs to any outside agency without the express permission of Boscia Trott.

21.     Pursuant to those contractual agreements, BT provided a limited license to MaxVita to use all of the copyright works that BT created for MaxVita's product line in MaxVita's business subject to the limitations and restrictions noted above, and subject to BT's rights under the United States Copyright Act.

- 4 -

## COUNT I

**(Direct Copyright Infringement & Related Claims
Pursuant to 17 U.S.C. § 101 et seq.)**

22.     BT repeats and realleges each and every paragraph outlined above with the same
force and effect as if more fully set forth at length herein.

23.     Defendants have violated the United States Copyright Act by altering, modifying
and/or manipulation BT's copyright works through a third-party and/or through defendants own
personal actions to create derivative marketing materials infringing upon BT's copyright works.

24.     Defendants have also violated the Copyright Act by improperly using BT's
copyright works without BT's authorization and consent.

25.     Defendants provision of BT's copyright works to third-party firms for alteration,
modification and/or manipulation for the advancement of MaxVita's business interest violates
the Copyright Act, 17 U.S.C. § s 501(a),  106(1), 106(2) and 106(3).  Moreover, these actions
establish MaxVita as an "infringer" within the meaning of 17 U.S.C. § 105(a) since defendants
own personal alteration, modification and/or manipulation of BT's copyright works through their
agents and/or representatives for the advancement of MaxVita's business interests also constitute
similar violations of the Copyright Act.

26.     BT created digital and non-digital marketing materials, websites and other
promotional materials for Maxvita's "Millennium Blend" product line.

27.     Maxvita's right to use those marketing materials has never included any right to
alter, modify and/or manipulate BT's copyright works in any manner without the express written
permission of BT.

BE:8633107.1/GAL124-267030

28.     The parties' written agreement expressly prohibits the provision of BT's copyright works directly to any third-party for any purpose whatsoever without BT's express permission.  Specifically, Page 1 of the written contract between BT and Maxvita provides as follows:

> NOTE: Maxvita may not provide original designs to any outside agency, firm or third-party without express permission and compensation to Boscia Trott.

29.      Specifically, Kim, has been repeatedly warned not to alter, modify and/or manipulate BT's copyright works in order to create marketing and promotional content for the Millennium Blend brand, either through her own effort or through third-parties.

30.     BT's Susan Trott has repeatedly directed Mrs. Kim to refrain from doing so, but to no avail.

31.     BT has discovered numerous infringements by Mrs. Kim after warnings to her to refrain from doing so, and after she removed discovered infringements only to later replace them with fresh ones.

32.     Max Vita, LLC also advised BT that BT would be creating the Millennium Blend Facebook and Twitter pages, only to later discovery that Mrs. Kim created those sites by altering, manipulating and modifying BT's copyright works without authorization or consent through her own efforts and/or those of a third-party firm.  This was done in an effort to avoid paying BT for use of its copyright works and for Mrs. Kim to financially benefit herself.

33.     BT has further learned that MaxVita provided BT's copyright works to third-parties serving as MaxVita's agents, representatives and/or business partners without BT's permission.

34.     The most willful and deliberate infringement of BT's copyright works was discovered on IdeaKings.co when clicking on that website's "our products" link, and then

clicking on the Millennium Blend's icon.  That sequence took the web viewer to an entire website advertising the Millennium Blend product line containing very significant copyright works copied verbatim from BT's copyright works, and that BT used in the Millennium Blend website.

35.     The IdeaKings.co infringement episode was perpetrated by defendants.  These clandestine infringements were never disclosed to BT and were never authorized or licensed by BT.  The use of BT's copyright materials for this hidden site is a complete theft and infringement of BT's copyright works.

36.      The Idea Kings has infringed BT's copyrights while claiming Idea Kings was the financier and marketing partner for Maxvita, implying that Idea Kings also performed the product design, packaging and marketing for the Millennium Blend brand.

37.     Defendants also turned over the digital files for the Millennium Blend consumer website to a third-party for alteration, modification and/or manipulation of those files. Defendants with those third-parties also altered BT's copyright works utilized in Millennium Blend's website and online marketing materials.

38.     Maffei previously made a clandestine attempt to access BT's digital files for Maxvita's separate medical field website so that she could also transfer those digital files to the third-party for alteration.

39.     BT has obtained from online evidence of defendants' infringement of BT's copyrights works to create derivative, altered and/or modified advertising and marketing materials for Millennium Blend.  These works evidence that: (i) Jackie Maffei provide the Millennium Blend site content to a third-party agency that altered the footer content on all pages and on the contact page; and (ii) that Maxvita is using BT's website content, PDF's and

packaging design in an altered and modified manner on Facebook and Twitter without BT's
authorization.

40.     Maffei and Dr. Stone have participated in the above infringements, and as
"corporate officers who participates in the commission of a tort may be held individually liable,
regardless of whether the corporate veil is pierced." Peguero v. 601 Realty Corp., 58 A.D. 3d 556
(2009); Espinosa v. Rand, 24 A.D. 3d (2005).  Consequently, they are both individually fully
liable for defendants'  willful copyright infringement of BT's works.

41.     BT owns copyright interests in all of the MaxVita marketing and advertising
materials, website design and layout, product labels and packaging, art, photography, design and
other marketing/branding materials used by MaxVita in the Millenium Blend product line.

42.     Defendants have wrongfully used those copyright works in connection with their
advertising, marketing and promotional campaigns for Millenium Blend.

43.     BT alone has the exclusive right to prepare derivative works based upon the
aforesaid copyright works pursuant to 17 U.S.C. § 106(2).

44.     Defendants' copying, downloading, use, publication, modification, reproduction,
display and distribution of each of BT's copyright works constitutes a violation of the Copyright
Act, 17 U.S.C. § s 501(a),  106(1), 106(2) and 106(3) and all defendants have been acting as
infringers within the meaning of 17 U.S.C. § 105(a).

45.      Defendants provision of BT's copyright works to third-party firms for alteration,
modification and/or manipulation for the advancement of MaxVita's business interest violates
the Copyright Act, 17 U.S.C. § s 501(a),  106(1), 106(2) and 106(3).  These actions establish
MaxVita as an "infringer" within the meaning of 17 U.S.C. § 105(a) since defendants own
personal alteration, modification and/or manipulation of BT's copyright works through their

BE:8633107.1/GAL124-267030

agents and/or representatives for the advancement of MaxVita's business interests also constitute similar violations of the Copyright Act.

46.     As a proximate result of defendants' copyright infringement, BT has suffered, and will continue to suffer, irreparable injury, some of which cannot be compensated in money damages.

47.     BT is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 enjoining all defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in such further violations of the Copyright Act.

48.     BT is entitled to a permanent injunction against all defendants, their officers, agents, employees, licensees and assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in or authorizing the copying, distribution, alteration, modification, displaying and/or exploitation of any of the aforesaid copyright works.

49.     BT is entitled to recover from defendants the damages, including pre-judgment interest, that BT sustained and will sustain, and any income, gains, profits, and advantages obtained by defendants as a result of their wrongful acts pursuant to 17 U.S.C. § 504(b), in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

50.     BT is entitled to the maximum statutory damages in the amount of $30,000.00 per infringement and/or $150,000.00 per willful infringement pursuant to 17 U.S.C. § 504(c) and/or for such other amount as may be proper under 17 U.S.C. § 504(c).

51.     BT is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505, as well as punitive damages, due to defendants' malice, ill will and willful wrongdoing directed towards Plaintiff and his copyright works and services.

- 9 -

52.     As a result, BT has been and will continue to be damaged.

## COUNT II

**(Contributory Copyright Infringement and Related Claims
Pursuant to 17 U.S.C. § 101 et seq.)**

53.     BT repeats and realleges each and every paragraph outlined above with the same
force and effect as if more fully set forth at length herein.

54.     Defendants' conduct outlined above constitutes contributory infringement of BT's
copyrights in violation of 17 U.S.C. §§ 106 and 501.

55.     Defendants directly encouraged, facilitated, and/or induced the unauthorized
reproduction, adaptation, distribution, alteration, modification and public display of BT's
copyright works by others, and defendants have contributory liability for BT's damages resulting
from same.

56.     BT is entitled to recover from defendants the damages that BT sustained and will
sustain, and any gains, profits and advantages obtained by defendants as a result of the
defendants' contributory infringements alleged in this Complaint, or in the alternative statutory
damages, as well as attorneys fees, and including but not limited to such damages and awards as
are available under 17. U.S.C. §§ 504-505.

57.     BT is also entitled to such other and further relief and remedies as are available
under the Copyright act, and /or which the Court may deem just and proper, including punitive
damages.

58.     BT is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 enjoining all
defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors,
and all persons acting in concert with them, from engaging in such further violations of the
Copyright Act.

BE:8633107.1/GAL124-267030

59.    BT is entitled to a permanent injunction against all defendants, their officers, agents, employees, licensees and assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in or authorizing the copying, distribution, alteration, modification, displaying and/or exploitation of any of the aforesaid copyright works belonging to BT.

60.    BT is entitled to recover from defendants the damages, including pre-judgment interest, that BT sustained and will sustain, and any income, gains, profits, and advantages obtained by defendants as a result of their wrongful acts alleged hereinabove pursuant to 17 U.S.C. § 504(b), in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

61.    BT is entitled to statutory damages for defendants' copyright infringements pursuant to 17 U.S.C. § 504(c) and/or for such other amount as may be proper under 17 U.S.C. § 504(c).

62.    As a result, BT has been and will continue to be damaged.

## COUNT III

### (Breach of Contract)

63.    BT repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

64.    Defendants actions and conduct constitute materials breaches of the written contractual agreements between the parties prohibiting MaxVita and its officers/representatives/agent from: (i) providing BT's copyright works to third-party design/advertising/marketing agencies and firms; (ii) altering, modifying, distorting and/or

creating derivative works from BT's copyright works without permission from and/or compensation to BT.

65.     MaxVita's material breaches noted above now excuse BT from further performance under the limited licensing agreement between the parties, and MaxVita is prohibited from further use of any of BT's copyright works for any aspect of MaxVita's business operations, advertising, marketing, etc.

66.     BT is consequently entitled to a permanent injunction prohibiting defendants from any further use of BT's copyright works.

67.     As a result, BT has been and will continue to be damaged.

## COUNT IV

### (Unjust Enrichment/Quantum Meruit)

68.     BT repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

69.     Defendants have been unjustly enriched in an amount to be proven at trial at the expense of BT, who was never paid for the services provided to defendants comprised of the copyright infringements that defendants have engaged in.

70.     Defendants received professional marketing, design, advertising and branding services from BT but have failed to pay BT for the reasonable value of BT's time and services contributed to the defendants' marketing, branding, product development and promotional campaign.

71.     BT is entitled by law to the reasonable value of his time and services contributed to defendants' marketing and promotional campaign.

72.      As a result, BT has been and will continue to be damaged.

BE:8633107.1/GAL124-267030

## COUNT V

### (Declaratory Judgment)

73. BT repeats and realleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

74. Leading up to this lawsuit, MaxVita's Managing Member Dr. Stone has raised completely false allegations that he and/or MaxVita are somehow joint authors in specific copyright works owned by BT

75. Leading up to this lawsuit, MaxVita's Managing Member and current 100% owner Dr. Stone has raised completely false allegations that BT somehow transferred ownership interest in BT's copyright works to MaxVita, which is completely false.

76. No written assignment(s) have ever been executed between the parties whereby BT purportedly assigned any of its ownership interest in any of BT's copyright works to MaxVita.

77. None of the copyright works that BT created for MaxVita's product lines were ever created as "works for hire."

78. None of the copyright works in controversy that BT created for MaxVita's product lines were "joint authorship" works.

79. Consequently, requests a declaratory judgment affirming and adjudication that: (i) BT is the exclusive owner of all works BT created for use in the MaxVita "Millenium Blend" product line; and (ii) that MaxVita has absolutely no ownership rights in any of BT's copyright works regarding any materials BT created for use in MaxVita's "Millenium Blend" product lines.

80. As a result, BT has been and will continue to be damaged.

BE:8633107.1/GAL124-267030

**WHEREFORE**, BT demands the following judgment against all defendants as follows:

(a)    enjoining defendants from further using BT's copyright works in any of MaxVita's business operations for any purpose whatsoever, including, but not limited to their advertising and promotional campaigns for the promotion of "Millenium Blend" nutrition health shakes;

(b)    ordering an accounting of all revenue received by the defendants as a result of their unlawful conduct so as to ascertain BT's damages;

(c)    awarding BT: (i) defendants' profits realized as a result of their copyright infringement of BT's works or in the Court's discretion a sum the Court finds to be equitable just; (ii) damages sustained by BT; and (iii) reasonable attorneys' fees and costs per 17 U.S.C. 505;

(d)    statutory damages in the amount of at least $30,000 per copyright infringement, $150,000 per willful copyright infringement and attorneys' fees/court costs pursuant to 17 U.S.C. §§ 504-505;

(e)    actual, direct, consequential and punitive damages;

(f)    pre-judgment and post-judgment interest;

(g)    attorneys' fees and costs incurred in this action per 17 U.S.C. 505; and

(h)    any other and further relief as to this Court deems just and proper.


Dated: August 31, 2016

*/s/ David J. Klein, Esq.*
**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
*Attorneys for Plaintiff*

BE:8633107.1/GAL124-267030

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 31, 2016

                                         <u>*/s/ David J. Klein, Esq.*</u>
**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
*Attorneys for Plaintiff*

- 15 -